IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**DIANNE M. BELLEW,**

      **Plaintiff,**

**v.**            **CIVIL ACTION NO.  2:13-cv-22473**

**ETHICON, INC., et al.,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**
*(Plaintiff's Motion for Partial Summary Judgment)*

Pending before the court is Plaintiff's Motion for Partial Summary Judgment on Failure to Warn and Proximate Causation ("Motion for Partial Summary Judgment") [Docket 112]. Responses and replies have been filed, and the motion is ripe for review. As set forth below, Plaintiff's Motion for Partial Summary Judgment [Docket 112] is **DENIED**.

  **I.**  **Background**

This bellwether case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 67,000 cases currently pending, approximately 22,000 of which are in the Ethicon, Inc. MDL, MDL 2327. In this particular case, the plaintiff was surgically implanted with the Prolift Anterior Pelvic Floor Repair System ("Prolift"), a mesh product manufactured by Ethicon and Johnson & Johnson (collectively, "Ethicon") to treat POP. (*See* Short Form Compl. [Docket 1],

at 2).[1] The plaintiff received her surgery in Arizona. (*Id.* at 3). The plaintiff claims that as a result of implantation of the Prolift, she has experienced multiple complications, including mesh erosion, mesh contraction, inflammation, dyspareunia (pain during sexual intercourse), urinary incontinence, chronic pain, and recurring prolapse of organs. (Master Compl. ¶ 49). In addition, she had four additional operations to remove and revise the implanted mesh. (Pl. Fact Sheet [Docket 206-1], at 7). The plaintiff alleges negligence, failure to warn, design defect, common law fraud, fraudulent concealment, negligent misrepresentation, breach of express warranty, violation of consumer protection laws, gross negligence, and punitive damages. (Short Form Compl. [Docket 1], at 4).[2]

In the instant motion, the plaintiff moves for partial summary judgment on the following issues: (1) the warnings in the Prolift Instructions for Use ("IFU") are inadequate as a matter of law; (2) the Prolift would not have been used with the plaintiff if adequate warnings had been provided; and (3) the Prolift was a proximate cause of injuries to the plaintiff. (Mot. for Partial Summ. J. [Docket 112], at 1).

**II.     Legal Standards**

    **a.  Partial Summary Judgment**

A partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note. A motion for partial summary judgment is governed by the same standard applied to consideration of a full motion for summary judgment. *See Pettengill v. United States*, 867 F. Supp. 380, 381

---

[1] I have selected this case as a Prolift bellwether case in the Ethicon MDL. (*See* Pretrial Order # 98 [Docket 29], at 1).

[2] Since filing her short form complaint, the plaintiff has dropped several causes of action from her lawsuit. (*See* Pl.'s Opp. to Defs.' Mot. for Summ. J. [Docket 153], at 1 n.1 ("Ms. Bellew will not pursue any causes of action for manufacturing defect, breach of implied warranty, constructive fraud, unjust enrichment, negligent infliction of emotional distress, or 'strict liability—product defect' (except to the extent the latter encompasses design defect and failure to warn).")).

(E.D. Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592. 595 (4th Cir. 1985)). To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor," *Anderson*, 477 U.S. at 256, that is, more than a mere "scintilla of evidence" in support of his or her position, *id.* at 252. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

b. **Choice of Law**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. Here, the plaintiff is an Arizona resident who was implanted with the Prolift in Arizona, but she filed her complaint directly into MDL 2327 in the Southern District of West Virginia. "For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction,

which in our case is the state in which the plaintiff was implanted with the product." *Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014); (*see also* Pretrial Order # 15, MDL 2327, at 2 n.2 ("A 'Directly Filed Case' is a case filed in the Southern District of West Virginia for inclusion in this MDL, but the Southern District of West Virginia does not necessarily have personal jurisdiction over the parties.")). Arizona is the originating jurisdiction, and the court must consult Arizona's choice-of-law principles to determine the substantive law applicable to the plaintiff's claims.

The parties do not appear to dispute that Arizona law applies to the substantive issues in this case, and Arizona's choice-of-law principles support their position. For tort claims, Arizona courts apply the "most significant relationship" test from the Restatement (Second) of Conflict of Laws (1971). *Bates v. Super. Ct.*, 749 P.2d 1367, 1369 (Ariz. 1988). Section 146 of the Second Restatement provides that in a personal injury case such as this, the court should apply "the local law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state has a more significant relationship [ ] to the occurrence and the parties, in which event the local law of the other state will be applied." *Id.* (quoting Restatement (Second) Conflict of Laws § 146). Here, the alleged injury occurred in Arizona. As such, Arizona law applies unless another state has a more significant relationship to this case and these parties.

To make this determination, the court should consider the following:

(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.

*Id.* Each of these considerations points to applying Arizona law rather than another state's law—the injury occurred in Arizona; the allegedly defective product was implanted and warned about in Arizona; the plaintiff resides in Arizona; and the relationship between the parties exists only

4

because of the implant surgery, which took place in Arizona. Therefore, Arizona law applies to the substantive claims in this matter.[3]

### III. Analysis

The plaintiff moves for partial summary judgment on three issues. Having thoroughly reviewed the parties' arguments, I **FIND** that a genuine issue of material fact exists for these issues such that partial summary judgment is not proper.

#### a. Inadequacy of the IFU Warnings

First, the plaintiff contends that "[t]he only conclusion a reasonable juror could reach on this undisputed record is that the warnings and information provided in the Prolift IFU were inadequate," and as a result, "partial summary judgment should be granted on failure to warn." (Pl.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. on Failure to Warn & Proximate Causation ("Mem. in Supp.") [Docket 113], at 14–15). I disagree. As an initial matter, questions on the adequacy of a product warning are best left to the trier of fact. *See Dole Food Co. v. N.C. Foam Indus., Inc.*, 935 P.2d 876, 880 (Ariz. Ct. App. 1996) ("Determining whether a warning is adequate to apprise users of dangers in the product is ordinarily a question for the trier of fact.") (internal quotations omitted). Furthermore, Ethicon has provided evidence to counter the plaintiff's contentions that the Prolift IFU lacked adequate warnings, creating a genuine issue of material fact on this claim.

The plaintiff asserts that several of the statements in the IFU "mislead" users about the "true dangers of the Prolift," (Mem. in Supp. [Docket 113], at 14), but Ethicon has contested this assertion by providing testimony that the supposedly misleading statements accurately depict the Prolift, (*see, e.g.*, Resp. in Opp. to Pl.'s Mot. for Partial Summ. J. ("Resp.") [Docket 152], at 6–7

---

[3] This choice-of-law analysis does not necessarily apply to the issue of punitive damages, which I will address in a separately entered order.

(providing testimony from Dr. Klinge that the Prolift has "biodirectional elasticity" as indicated by the IFU)). In addition, while the plaintiff lists thirty-two risks that Ethicon did not include in the Prolift IFU, (*see* Mem. in Supp. [Docket 113], at 7), Ethicon has provided evidence that some, if not all, of these specific risks are subsumed by other warnings contained in the IFU, (*see, e.g.*, Resp. [Docket 152], at 9 (citing to testimony that "severe complications are noted in the IFU")).

Moreover, Ethicon has offered evidence that the treating physician in this case, Dr. Carol Dehasse, had prior knowledge of some, if not all, of these listed risks. (*See, e.g.*, *id.* at 13 (referring to Dr. Dehasse's testimony that she knew about the risks of serious inflammation and chronic pain prior to performing the plaintiff's implantation surgery)). If Dr. Dehasse indeed had such knowledge, then the alleged failure to warn of the known risk "is not considered a defect" under Arizona law. *Sw. Pet Prods., Inc. v. Koch Indus., Inc.*, 273 F. Supp. 2d 1041, 1060 (D. Ariz. 2003) (stating that when the "relevant consumer" knows and recognizes the danger, then failure to warn of that danger "is not considered a defect"). Ethicon has also tendered evidence indicating that some of the allegedly unwarned-of risks "are not specific to Prolift." (Resp. [Docket 152], at 10). Viewing the evidence in the light most favorable to Ethicon, a genuine issue of material fact exists as to whether the IFU included or should have included the various risks alleged by the plaintiff, and I decline to find as a matter of law that the IFU was inadequate.

### b. Liability of Ethicon for Failure to Warn

Second, the plaintiff asserts that Ethicon is liable for failure to warn as a matter of law because Dr. Dehasse "unequivocally" testified that if she had known about "the nature, frequency, and severity of the risks[,] she would not have used the Prolift." (Mem. in Supp. [Docket 113], at 16). As Ethicon points out, however, Dr. Dehasse's testimony on this matter is

not as "unequivocal" as the plaintiff suggests. For example, Dr. Dehasse testified that had she known that the mesh could elicit a chronic inflammatory reaction, she would not have used it, but she also testified that she knew about the risks of potential inflammation, both serious and minor, prior to the plaintiff's implantation surgery. (*See* Resp. [Docket 152], at 13 (quoting Dehasse Dep. [Docket 153-3], at 397:23–398:4)). Additionally, although Dr. Dehasse testified that she "stopped using [a] transvaginal approach" because of the "high grade" of dyspareunia, (*id.* at 305:7–15), she also testified that in her informed consent discussion with Ms. Bellew, she explained the risk of dyspareunia, as well as other risks associated with the implant surgery, (*id.* at 438:8–15; *see also id.* at 411:19–24 ("I always say the risk of bleeding, infection, risk of pain, pain with intercourse, pain with urination, risk of needing another surgery, risk of mesh erosion.")). In sum, contradicting evidence exists as to whether Dr. Dehasse knew about the nature of the risks associated with the Prolift, and therefore, summary judgment is not appropriate on this issue.

### c. Proximate Causation

Last, the plaintiff asserts that "partial summary judgment should be granted in plaintiff's favor, determining that the Prolift was a proximate cause of each of the enumerated injuries." (Mem. in Supp. [Docket 113], at 17). As support for this motion, the plaintiff points to the fact that Dr. Dehasse and two defense experts, Dr. Denise Elser and Dr. Christina Pramudji, admitted that the Prolift caused some of the plaintiff's symptoms. (*Id.*). Ethicon explains, however, that for any type of defective product claim, the burden on the plaintiff goes beyond demonstrating that the product caused the injuries. Rather, the plaintiff must prove that "[the product's] *defect* was a proximate cause of plaintiff's injuries." (Resp. [Docket 152], at 18). Arizona law supports this position. *See Jimenez v. Sears, Roebuck & Co.*, 904 P.2d 861, 864 (Ariz. 1995) ("A prima

facie case of strict products liability is established by showing that when the product left the defendant's control, it was in a defective condition that made it unreasonably dangerous and the defect was a proximate cause of plaintiff's injuries.") (emphasis omitted). The plaintiff has offered testimony that the presence of the Prolift caused pain to Ms. Bellew. (*See* Mem. in Supp. [Docket 113], at 10–13 (providing testimonial evidence that the mesh caused pain to Ms. Bellew)). A genuine issue of material fact, however, exists as to whether a *defect* in the Prolift caused Ms. Bellew's injuries. Accordingly, I cannot find on the issue of proximate cause as a matter of law.

## IV. Conclusion

For the reasons set forth above, I **DENY** the Plaintiff's Motion for Partial Summary Judgment [Docket 112].The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: November 20, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE