IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DIANNE M. BELLEW,

                    Plaintiff,

v.                                                      CIVIL ACTION NO.  2:13-cv-22473

ETHICON, INC., et al.,

                    Defendants.

MEMORANDUM OPINION AND ORDER
(Defendants' Motion for Summary Judgment)

      Pending before the court is the defendants' Motion for Summary Judgment on All Claims ("Motion for Summary Judgment") [Docket 105] and the plaintiff's Motion to Strike or Exclude Defendants' Untimely Summary Judgment Filing ("Motion to Strike") [Docket 140]. Responses and replies have been filed, and the motion is ripe for review. As set forth below, the defendants' Motion for Summary Judgment [Docket 105] is **GRANTED in part** and **DENIED in part**. The plaintiff's Motion to Strike [Docket 140] is **DENIED as moot**.

    **I.**      **Background**

      This bellwether case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 67,000 cases currently pending, approximately 22,000 of which are in the Ethicon, Inc. MDL, MDL 2327. In this particular case, the plaintiff was surgically implanted with the Prolift Anterior Pelvic Floor Repair System ("Prolift"), a mesh product manufactured by Ethicon and

Johnson & Johnson (collectively, "Ethicon") to treat POP. (*See* Short Form Compl. [Docket 1], at 2).[1] The plaintiff received her surgery in Arizona. (*Id.* at 3). The plaintiff claims that as a result of implantation of the Prolift, she has experienced multiple complications, including mesh erosion, mesh contraction, inflammation, dyspareunia (pain during sexual intercourse), urinary incontinence, chronic pain, and recurring prolapse of organs. (Master Compl. ¶ 49). In addition, she had four subsequent operations to remove and revise the implanted mesh. (Pl. Fact Sheet [Docket 206-1], at 7). The plaintiff alleges negligence, failure to warn, design defect, common law fraud, fraudulent concealment, negligent misrepresentation, breach of express warranty, violation of consumer protection laws, gross negligence, and punitive damages. (Short Form Compl. [Docket 1], at 4).[2]

In the instant motion, Ethicon argues the all of the plaintiff's claims are barred by the statute of limitations. (Mot. for Summ. J. [Docket 105], at 1). In the alternative, Ethicon moves for summary judgment on the plaintiff's claims for design defect, manufacturing defect, fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, breach of warranty, consumer protection, unjust enrichment, and negligent infliction of emotional distress. (*Id.*). As noted above, the plaintiff has abandoned her claims for manufacturing defect, breach of implied warranty, constructive fraud, unjust enrichment, negligent infliction of emotional distress, and strict liability–product defect. (*See* Pl.'s Opp. [Docket 153], at 1 n.1). Accordingly, Ethicon's motion with regard to the abandoned claims is **GRANTED**, and those claims are **DISMISSED**.

## II. Legal Standards

---

[1] I have selected this case as a Prolift bellwether case in the Ethicon MDL. (*See* Pretrial Order # 98 [Docket 29], at 1).

[2] Since filing her short form complaint, the plaintiff has dropped several causes of action from her lawsuit. (*See* Pl.'s Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Opp.") [Docket 153], at 1 n.1 ("Ms. Bellew will not pursue any causes of action for manufacturing defect, breach of implied warranty, constructive fraud, unjust enrichment, negligent infliction of emotional distress, or 'strict liability—product defect' (except to the extent the latter encompasses design defect and failure to warn).")).

### a. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### b. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve

federal or state law. Here, the plaintiff is an Arizona resident who was implanted with the Prolift in Arizona, but she filed her complaint directly into MDL 2327 in the Southern District of West Virginia. "For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product." *Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014); (*see also* Pretrial Order # 15, MDL 2327, at 2 n.2 ("A 'Directly Filed Case' is a case filed in the Southern District of West Virginia for inclusion in this MDL, but the Southern District of West Virginia does not necessarily have personal jurisdiction over the parties.")). Arizona is the originating jurisdiction, and the court must consult Arizona's choice-of-law principles to determine the substantive law applicable to the plaintiff's claims.

The parties do not appear to dispute that Arizona law applies to the substantive issues in this case, and Arizona's choice-of-law principles support their position. For tort claims, Arizona courts apply the "most significant relationship" test from the Restatement (Second) of Conflict of Laws (1971). *Bates v. Super. Ct.*, 749 P.2d 1367, 1369 (Ariz. 1988). Section 146 of the Second Restatement provides that in a personal injury case such as this, the court should apply "the local law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state has a more significant relationship [ ] to the occurrence and the parties, in which event the local law of the other state will be applied." *Id.* (quoting Restatement (Second) Conflict of Laws § 146). Here, the injury occurred in Arizona. As such, Arizona law applies unless another state has a more significant relationship to this case and these parties.

To make this determination, the court should consider the following:

(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of

>incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.

*Id.* Each of these considerations points to applying Arizona law rather than another state's law— the injury occurred in Arizona; the allegedly defective product was implanted and warned about in Arizona; the plaintiff resides in Arizona; and the relationship between the parties exists only because of the implant surgery, which took place in Arizona. Therefore, Arizona law applies to the substantive claims in this matter.[3]

### III.   Analysis

#### a.   Statute of Limitations

In Arizona, there is a two-year statute of limitations for personal injury actions, including product liability actions. A.R.S. §§ 12-542, 12-551, 12-681; *see generally Wetzel v. Commercial Chair Co.*, 500 P.3d 314 (Ariz. 1972) (holding "that two-year personal injury statute of limitations was applicable to action against manufacturer and retailer of office chair for injuries sustained by purchaser when chair broke"). However, under Arizona's discovery rule, "a cause of action accrues once the plaintiff knows of the injury and the causal connection between the defendant's product and that injury." *Mack v. A.H. Robins Co.*, 573 F. Supp. 149, 154 (D. Ariz. 1983). In other words, the cause of action accrues when the plaintiff discovers or should have discovered the injury and its cause. *See id.* at 153–54. Although "plaintiffs are charged with due diligence in pursuing their claims," a plaintiff is not required to have knowledge of the defendant's improper conduct or defect in the product in order to trigger accrual. *Id.* at 154 (citing *Rodriquez v. Manoil*, 450 P.2d 737 (Ariz. Ct. App. 1969)).

Ethicon argues that the plaintiff's claims are barred by the statute of limitations because Dr. Dehasse, Ms. Bellew's implanting physician, told her that "she was having complications

---

[3] This choice-of-law analysis does not necessarily apply to the issue of punitive damages, which I will address in a separately entered order.

due to her mesh implant in May or June of 2011 at the latest," but she did not serve her complaint until July 13, 2013. (Mem. in Supp. of Defs.' Mot. for Summ. J. on All Claims ("Defs.' Mem. Supp.") [Docket 106], at 3, 5). Ms. Bellew's medical records note that she experienced mesh complications in 2011, which resulted in Ms. Bellew undergoing a removal procedure on July 27, 2011. (*Id.* at 5–6). However, Dr. Dehasse's deposition testimony regarding what she actually told Ms. Bellew is inconsistent and inconclusive. For example, Dr. Dehasse responded equivocally when asked about Ms. Bellew's June 2011 visit:

> Q. Did you discuss, again, mesh complications due to mesh?
> A. Well, yes, because I could feel vaginally that she was very uncomfortable.
> Q. And when you're discussing the mesh erosion at this point, what are you telling her? That you're feeling mesh obviously?
> A. Well, no, this is no longer a mesh erosion issue because I don't feel any mesh anymore after her using estrogen. But I can feel that she still has that same tenderness she had at the last visit.
> Q. Okay. And she knew that that tenderness was as a result of the mesh?
> A. Yes, because it's along the path of the mesh.
> Q. And you told her that at that earlier visit, May 20 – I guess May 19, '11 visit you said you're having pain as a result of mesh?
> A. Yes. No, because if you could – you can feel it at the end, you can feel where the mesh is, and you can feel the points of tenderness.

(*See* Dehasse Dep. Tr. [Docket 105-13], at 3). Ms. Bellew subsequently testified that she did not become aware of the possibility that a product defect caused her injuries until February or March of 2012. (Pls.' Opp. [Docket 153], at 8–9).

Based on the record before me, I conclude that there is a genuine issue of material fact regarding when Ms. Bellew knew or should have discovered that her mesh implant caused her injuries. I cannot determine as a matter of law that Ms. Bellew discovered her cause of action more than two years before filing suit. Accordingly, Ethicon' motion for summary judgment with regard to the statute of limitations is **DENIED**.

    b. **Design Defect**

In Arizona, "[a] manufacturer is strictly liable for injuries caused by use of any product that was in a 'defective condition unreasonably dangerous.'" *Golonka v. General Motors Corp.*, 65 P.3d 956, 962 (Ariz. Ct. App. 2003) (quoting *Dart v. Wiebe Mfg., Inc.*, 709 P.2d 876, 878 (Ariz. 1985), and Restatement (Second) of Torts § 402A (1965))).

> To succeed in a products liability lawsuit based upon a design defect claim, a plaintiff must establish that (1) the defendant manufactured or sold a product, (2) the product was defective in its design and unreasonably dangerous, (3) the defect existed at the time the product left the defendant's control, (4) the defective condition proximately caused the plaintiff's injury, and (5) the plaintiff suffered damages as a result.

*Anderson v. Nissei ASB Mach. Co.*, 3 P.3d 1088, 1092 (Ariz. Ct. App. 1999). To determine whether a product is in a "defective condition unreasonably dangerous," courts employ both the "consumer expectation test" and the "risk/benefit analysis." *Golonka*, 65 P.3d at 962. The only argument Ethicon makes with regard to design defect is that it is barred by Restatement (Third) of Torts § 6(c), which Ethicon admits has "not [been] specifically adopted by Arizona state courts." (Defs. Mem. Supp. [Docket 106], at 9). Because Ethicon has chosen not to make an argument under binding Arizona state law, their motion for summary judgment with regard to design defect is **DENIED**. Furthermore, even under the appropriate test stated above, I **FIND** that the plaintiff has presented sufficient evidence on design defect to show that there is a genuine dispute of material fact. (*See* Pl.'s Opp. [Docket 153], at 2 ("Dr. Elliott further notes that 'the increased patient risks, complication rates, and the added expense of the PROLIFT System far outweigh any stated or implied benefit.'")).[4]

### c. Fraud-Based Claims

---

[4] In further support of their argument that Restatement § 6(c) bars the plaintiff's design defect claim, Ethicon filed a Supplement to Defendants' Motion for Summary Judgment on All Claims [Docket 138]. Subsequently, the plaintiff filed a Motion to Strike or Exclude Defendants' Untimely Summary Judgment Filing [Docket 140]. Because the supplement relates to the defendants' design defect argument, which I have already **DENIED**, the plaintiff's motion is unnecessary and thus **DENIED as moot**.

Next, Ethicon contends that the plaintiff cannot sustain her claims for fraud, fraudulent concealment, negligent misrepresentation, and breach of warranty because the learned intermediary doctrine applies to each of these claims, making them indistinguishable from the plaintiff's failure to warn claim. (Defs.' Mem. Supp. [Docket 106], at 11). I previously granted a similar motion under Illinois law. *See Huskey v. Ethicon, Inc.*, No. 2:12-cv-05201, 2014 WL 3362287, at *6-7 (S.D. W. Va. July 8, 2014) (applying Illinois state law). Like Illinois, Arizona applies the learned intermediary doctrine in products liability actions. *See Dole Food Co., Inc. v. N.C. Foam Indus.*, 935 P.2d 876, 880 (Ariz. Ct. App. 1996). "Under the learned intermediary doctrine, the manufacturer's duty to warn is ordinarily satisfied if a proper warning is given to the specialized class of people that may prescribe or administer the product." *Davis v. Cessna Aircraft Corp.*, 893 P.2d 26, 38 (Ariz. Ct. App. 1994) (internal quotation marks omitted). While the parties in this case have not relied on precisely the same arguments, my reasoning and conclusions from *Huskey* still govern. Furthermore, to the extent that there are differences in fact and exhibits, the court does not find them sufficiently material.

In *Huskey*, I ruled as follows:

Ethicon argues that because Illinois's learned intermediary doctrine does not require medical device manufacturers to warn end-users, the doctrine should bar the fraud-based claims premised on representations made to Ms. Huskey. Otherwise, Ethicon contends, plaintiffs could simply plead around the learned intermediary doctrine by characterizing failure-to-warn claims as fraud claims.

Illinois courts have not directly addressed this issue. However, courts around the country have extended the learned intermediary doctrine to all claims based on a manufacturer's failure to warn, including claims for fraud, misrepresentation, and breach of warranty. *See, e.g.*, *Talley v. Danek Med., Inc.*, 179 F.3d 154, 163-64 (4th Cir. 1999) (barring breach of warranty and fraud claims); *Lee v. Mylan, Inc.*, 806 F. Supp. 2d 1320, 1325 (M.D. Ga. 2011) (negligent misrepresentation and breach of warranty claims); *Beale v. Biomet, Inc.*, 492 F. Supp. 2d 1360, 1372 (S.D. Fla. 2007) (negligent misrepresentation); *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1218 (N.D. Ala. 2006) (fraudulent misrepresentation); *In re*

8

> *Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997) (misrepresentation and implied warranty); *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 169 (Tex. 2012) (fraud by omission).
>
> Here, the plaintiffs' fraud-based claims and warranty claims are simply repackaged failure-to-warn claims
> . . .
>
> If the learned intermediary doctrine "could be avoided by casting what is essentially a failure to warn claim under a different cause of action . . . then the doctrine would be rendered meaningless." *In re Norplant Contraceptive Products Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997). Accordingly, I predict with confidence that, if confronted with this issue, the Illinois Supreme Court would hold that the learned intermediary doctrine applies to all claims based on a medical device manufacturer's failure to warn, including fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, and breach of warranty. Therefore, Ethicon's motion for summary judgment on fraud-based claims and warranty claims is **GRANTED**.

*Huskey*, 2014 WL 3362287, at *6-7. Accordingly, Ethicon's motion for summary judgment with regard to the plaintiff's claims for fraud, fraudulent concealment, negligent misrepresentation, and breach of warranty is **GRANTED**, and these claims are **DISMISSED**. Furthermore, because the plaintiff's claim under the Arizona Consumer Fraud Act presents the same concerns as her common law fraud claims, this claim is also **DIMISSED**.

### IV. Conclusion

For the reasons discussed above, the defendants' Motion for Summary Judgment [Docket 105] is **GRANTED in part** and **DENIED in part**. The plaintiff's Motion to Strike [Docket 140] is **DENIED as moot**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:       November 24, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE